```
UNITED STATES DISTRICT COURT                              USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                             DOCUMENT
------------------------------------------------------ X  ELECTRONICALLY FILED
ELSEVIER INC.,                                         :  DOC #: _____
                                                       :  DATE FILED: January 23, 2018
                        Plaintiff,                     :
              -v-                                      :  17-cv-5540 (KBF)
                                                       :
DOCTOR EVIDENCE, LLC,                                  :  OPINION & ORDER
                                                       :
                        Defendant.                     :
------------------------------------------------------ X
```

KATHERINE B. FORREST, District Judge:

On July 7, 2017, plaintiff Elsevier Inc. ("Elsevier") filed a suit against Doctor Evidence, LLC ("DRE") for breach of contract. (ECF No. 1, Compl.) With its Answer, DRE filed four counterclaims for breach of contract, unjust enrichment, conversion, and misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq. (ECF No. 22, Answer and Counterclaims.) On November 8, 2017, Elsevier filed a motion to dismiss DRE's second, third, and fourth counterclaims for unjust enrichment, conversion, and violation of the federal Defense of Trade Secrets Act. (ECF No. 28, Mot. to Dismiss.)

With leave of the Court—and Elsevier's consent—DRE simultaneously submitted amended counterclaims and its opposition to Elsevier's motion. (See ECF Nos. 33, 35, 36.) The Amended Counterclaims add some specificity to DRE's allegations and replaced the conversion claim with a New York common law trade secrets misappropriation claim. DRE's opposition memorandum and Elsevier's subsequent reply memorandum were both addressed to the Amended

Counterclaims. As such, the Court treats the instant motion to dismiss as addressed to the Amended Counterclaims.

For the reasons stated below, Elsevier's motion to dismiss Claims II, III, and IV (the trade secrets and unjust enrichment claims) is GRANTED.

I.  BACKGROUND[1]

On July 18, 2014, Elsevier and DRE entered into a Professional Services Agreement (the "PSA"), under which DRE agreed to use its proprietary software to perform data analysis on individual articles identified by Elsevier. (ECF No. 35-1, PSA.) Under the PSA, Elsevier is obligation to hold information provided by DRE, "including, but not limited to, specifications, drawings, data, computer programs, know-how, designs, source code, technical information, concepts, reports, methods, processes, techniques, operations, devices, customer information, sales and operations information, cost and pricing information, marketing and financial or other technical and business information, in whatever form . . . in the strictest confidence." (Am. Counterclaims ¶ 6.) Elsevier agreed to use the Information "'only for the purposes of providing or receiving the benefit of' the services provided under the PSA." (Id. ¶ 8 (quoting PSA at 1, 12).)

After the PSA went into effect, Elsevier and DRE engaged in "regular teleconferences to discuss . . . questions relating to activity pursuant to the PSA." (Id. ¶ 9.) DRE alleges that these conversations were a "pretext to gain access to

---
[1] The factual allegations below are derived from DRE's Amended Counterclaims, (ECF No. 35, Am. Counterclaims), and are presumed true for purposes of this motion.

2

DRE personnel, resources, servers, and systems" and that Elsevier "then used the DRE Confidential Information for purpose of developing its own products and services." (Id. ¶ 10.) DRE alleges that Elsevier's questions were "intended to elicit trade secrets which DRE had continually protected by various means including written non-disclosure agreements." (Id. ¶ 11.)

DRE's Amended Counterclaims list nine general categories of confidential information that it asserts it disclosed to Elsevier. For example, it provided information relating to its "Guideline and Research Organizations Worldwide for Transparency and Harmonization ("GROWTH") initiative, which is an innovative set of initiatives launched by DRE to improve communication among disparate segments of the health ecosystem." (Id. ¶ 13.) Elsevier allegedly used this information to "develop its own proposed services with technology and features that are substantially similar to DRE's GROWTH initiative." (Id.) Another alleged general example of confidential information is DRE's method of assessing risk of bias based on a study's funding source. (Id. ¶ 20.) DRE claims that "Elsevier representatives again spent a significant amount of time discussing this topic with the DRE team, reviewing, and rereviewing DRE's technology and the underlying programming . . . [and] then employed a clinician to conduct the risk of bias assessment." (Id. ¶ 20.) Throughout its Amended Counterclaims, DRE alleges that it provided information to Elsevier in reliance "on the confidentiality clause of the PSA or in the alternative on the [nondisclosure agreement ('NDA')]," which had been signed prior to the PSA. (Id. ¶¶ 11, 17, 25.)

3

DRE alleges that Elsevier "offers its own evidence-based medicine analytics tools and services, such as ClinicalKey. On information and belief, Elsevier wrongfully used the DRE Confidential Information for the purpose of developing new features that it included, or intended or intends to include, into ClinicalKey and potentially other products and services as well . . . ." (Id. ¶ 28.) Since July 2014, Elsevier has allegedly used DRE's Confidential Information to "introduce[] new features into ClinicalKey, such as GRADE Summary of Finding Tables, Forest Plots, and Funnel Plots." (Id. ¶ 29.)

## II. LEGAL PRINCIPLES

### A. Standard for a Motion to Dismiss

The standard to dismiss a counterclaim is the same as that for any affirmative claim. Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide grounds upon which their claim rests through "factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, the complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'" Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

4

the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In applying that standard, the Court accepts as true all well-pled factual allegations, but it does not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." Id. Furthermore, the Court will give "no effect to legal conclusions couched as factual allegations." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). If the Court can infer no more than the mere possibility of misconduct from the factual averments—in other words, if the well-pled allegations of the complaint have not "nudged [plaintiff's] claims across the line from conceivable to plausible"—dismissal is appropriate. Twombly, 550 U.S. at 570.

B. Unjust Enrichment

To state a claim for unjust enrichment under New York law, a plaintiff must allege that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Briarpatch Ltd., L.P v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004) (citing Clark v. Daby, 751 N.Y.S.2d 622, 623 (N.Y. App. Div. 2002)).

Generally, "a claim for unjust enrichment may be pleaded in the alternative to other claims." Barnet v. Drawbridge Special Opportunities Fund LP, No. 14-cv-1376, 2014 WL 4393320, at *22 (S.D.N.Y. Sept. 5, 2014) (citations omitted); see also Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or

defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.") However, unjust enrichment "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Corsello v. Verizon, Inc., 18 N.Y.3d 777, 790 (2012) (citations omitted); see also Mahoney v. Endo Health Solutions, Inc., No. 15-cv-9841, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016). If a "valid and enforceable" contract governs the dispute, a party may not recover under unjust enrichment. Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield, 448 F.3d 573, 587 (2d Cir. 2006). Rather, unjust enrichment "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Corsello, 18 N.Y.3d at 790; see also Mahoney, 2016 WL 3951185, at *11. "Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." Corsello, 18 N.Y.3d at 790 (citations omitted); see also Mahoney, 2016 WL 3951185, at *11.

    C. Federal and New York Trade Secret Law

        1. General Standard

For a party to succeed on a claim for the misappropriation of trade secrets under New York law, it must demonstrate "(1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement,

6

confidential relationship or duty, or as the result of discovery by improper means."
Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 117 (2d Cir. 2009)
(quoting N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 43-44 (2d Cir. 1999)).

Similarly, under the federal Defend Trade Secrets Act, "a party must show 'an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty.'" In re Document Techs. Litig., No. 17-cv-2405, 2017 WL 2895945, at *5 (S.D.N.Y. July 6, 2017) (quoting Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc., No. 15-cv-0211, 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016)); see also 18 U.S.C. § 1839(3)(A)-(B); Broker Genius, Inc. v. Zalta, No. 17-cv-2099, 2017 WL 5991831, at *11 (S.D.N.Y. Dec. 4, 2017) ("The DTSA (codified in 18 U.S.C. § 1831, et seq.), which created a federal cause of action for the misappropriation of trade secrets used in interstate commerce, requires that the plaintiff establish 'an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty.'" (quoting Free Country Ltd v. Drennen, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016))).

7

2. <u>Defining a Trade Secret</u>

"[A] trade secret is any pattern, formula, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." <u>Softel Inc. v. Dragon Med. & Scientific Commc'ns, Inc.</u>, 118 F.3d 955, 968 (2d Cir. 1997) (internal quotation marks and citations omitted). It is "not simply information as to a single or ephemeral events in the conduct of the business; rather, it is a process or device for continuous use in the operation of the business." <u>Softel</u>, 118 F.3d at 968 (2d Cir. 1997) (citation omitted). Trade secrets can "exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable trade secret." <u>Integrated Cash Mgmt. Serv., Inc. v. Digital Transactions, Inc.</u>, 920 F.2d 171, 174 (2d Cir. 1990) (citations omitted). As the Court said in another case interpreting the federal Defend Trade Secrets Act ("DTSA"),

> Although there is no one-size-fits all definition to a trade secret, New York courts generally consider the following factors to determine its contours:
> "(1) the extent to which the information is known outside of the business;
> (2) the extent to which it is known by employees and others involved in the business;
> (3) the extent of measures taken by the business to guard the secrecy of the information;
> (4) the value of the information to the business and its competitors;
> (5) the amount of effort or money expended by the business in developing the information; [and]
> (6) the ease or difficulty with which the information could be properly acquired or duplicated by others."

In re Document Techs. Litig., 2017 WL 2895945, at *5 (quoting Bancorp Servs., LLC v. Am. Gen. Life Ins. Co., No. 14-cv-9687, 2016 WL 4916969, at *11 (S.D.N.Y. Feb. 11, 2016)). Likewise, under the DTSA, a "trade secret" is defined as information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C.A. § 1839(3)(B). In order to qualify as a trade secret, the owner must have "taken reasonable measures to keep such information secret." Id. § 1839(3)(A).

Trade secrets are a narrow category of confidential information; to survive a motion to dismiss, a party alleging that it owns a trade secret must put forth specific allegations as to the information owned and its value. IDX Sys. Corp. v. Epic Sys. Corp., 285 F.3d 581, 583 (7th Cir. 2002) ("Trade secrets are a subset of all commercially valuable information."); Next Commc'ns, Inc. v. Viber Media, Inc., No. 14-cv-8190, 2016 WL 1275659, at *3 (S.D.N.Y. Mar. 30, 2016) ("New York and Second Circuit law . . . requires the trade secret claimant to describe the secret with sufficient specificity that its protectability can be assessed . . . ." (quoting Sit-Up Ltd. v. IAC/InterActiveCorp., No. 05-cv-9292, 2008 WL 463884, at *10 (S.D.N.Y. Feb. 20, 2008))); Blue Ocean Laboratories, Inc. v. Tempur Sealy Int'l, Inc., No. 15-cv-0331, 2015 WL 9592523, at *6 (M.D.N.C. Dec. 31, 2015) (explaining that a complaint must identify trade secrets with "sufficient particularity"); Procaps S.A.

9

v. Patheon Inc., No. 12-cv-24356, 2015 WL 4430955, at *2 (S.D. Fla. July 20, 2015) (noting that the category of "trade secret" is a subset of "confidential information").

### 3. Misappropriation

In New York, "trade secret law . . . does not offer protection against discovery by fair and honest means, such as . . . by so-called reverse engineering, that is by starting with the known product and working backward to divine the process which aided its development or manufacture." Faiveley Transp. Malmo AB, 559 F.3d at 117 (quoting Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 476 (1974)) (omission in original). Similarly, "[t]he DTSA's definition of 'improper means' includes 'misrepresentation, [and] breach or inducement of a breach of a duty to maintain secrecy,' but expressly excludes 'reverse engineering' and 'independent derivation.'" Broker Genius, 2017 WL 5991831, at *11 (quoting 18 U.S.C. § 1839(6)(A)-(B)). Using information "in breach of an agreement or confidential relationship" may constitute misappropriation, Free Country Ltd v. Drennen, 235 F. Supp. 3d 559, 567 (S.D.N.Y. 2016), but a "claim for misappropriation requires bad faith." Ferring B.V. v. Allergan, Inc., 4 F. Supp. 3d 612, 628 (S.D.N.Y. 2014).

## III. DISCUSSION

### A. Unjust Enrichment Claim

Neither party disputes the existence or validity of the contract governing the parties' relationship, the PSA. Accordingly, DRE's unjust enrichment claim (the Second Counterclaim) must be dismissed. See Corsello v. Verizon, Inc., 18 N.Y.3d 777, 790 (2012). DRE seeks to avoid this result by arguing that because the PSA is

10

silent on "three key issues"—including, inter alia, Elsevier's "continued possession and use of article abstracts . . . that it purportedly has not 'accepted'" and benefits conferred on Elsevier "after the possible expiration of the PSA on December 31, 2016"—the unjust enrichment claim is not in fact duplicative of the contract claim. (ECF No. 36, Mem. Opp. at 2.) This is incorrect.

"[W]here the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded." IDT Corp. v. Morgan Stanley Dean Witter & Co., 907 N.E.2d 268, 274 (N.Y. 2009) (emphasis added). The question, then, is not whether a contract covers every possible aspect of a dispute between its signatories. DRE cannot bring an unjust enrichment claim regarding the general subject matter that the PSA governs. As a result, the fact that the PSA does not explicitly cover, for instance, the consequences of Elsevier keeping abstracts which it did not formally accept does not mean that the agreement is silent on the "particular subject matter" at issue. Whether or not Elsevier was permitted to "accept" or "reject" abstracts is plainly a question of what the contract governing the parties' relationship allows—it is not extrinsic to the parties' agreement. Similarly, the consequences of Elsevier's alleged misuse of confidential information is covered by the PSA, which has an express provision covering confidentiality. (See PSA at 4–6.) Simply put, the contract covers the dispute, so DRE cannot bring a claim for unjust enrichment.

11

B. Trade Secrets Claim

The pleading standard required by Twombly and Iqbal—that a plaintiff provide the grounds upon which its claim rests through factual allegations sufficient to raise a right to relief above the speculative level—forecloses DRE's trade secret claims here. Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 677–78. Throughout its pleading, DRE refers principally to "confidential information." The term "trade secrets" is used several times—but in a manner interchangeable with the general category of confidential information. As discussed below, "confidential information" is not equivalent to "trade secrets." For good reason, the law requires that before information or processes may be accorded trade secret status, it must be shown that it is truly trade secret—a standard far greater than the standard for confidentiality of business information. Here, it is evident from the pleading that DRE has not come close to alleging sufficient facts that support trade secret status. See In re Document Techs. Litig., No. 17-cv-2405, 2017 WL 2895945, at *5 (S.D.N.Y. July 6, 2017).

DRE's Amended Counterclaims list nine extraordinarily general categories of what, in Claim II, it refers to as "trade secret information":

1. DRE's GROWTH initiative;
2. DRE's clinical methods relating to executing projects and related protocols and information[;]
3. DRE's data configuration protocols and methods;
4. DRE's interpretation of data;
5. DRE's process to assess the quality of evidence and how to execute it;
6. DRE's assessments of the risk of bias of the evidence based on the funding source;
7. DRE's analytics, analytics tools, and analytics programming;

12

8. DRE's ontology process and tools, including DRE's unique and proprietary process for "binding" collecting original terms in a publication and then binding the like terms and synonyms to that original term; and
9. [T]he database field names, parameters and database schema information embedded within the summaries DRE delivered to Elsevier.

(Am. Counterclaims ¶¶ 49–50.) Alleging the existence of general <u>categories</u> of "confidential information," without providing any details to "generally define the trade secrets at issue," Next Commc'ns, 2016 WL 1275659, at *4, does not give rise to a plausible allegation of a trade secret's existence.

For example, DRE refers to its "clinical methods," "process to assess the quality of evidence and how to execute it," and "interpretation of data," (Am. Counterclaims ¶ 50), but does not elucidate how those "methods," "processes," and "interpretations" function. The same goes for its general assertions regarding "analytics, analytics tools, and analytics programming" and "data configuration protocols and methods." Even DRE's most specific assertion—its "ontology process and tools, including DRE's unique and proprietary process for 'binding' collecting original terms in a publication and then binding the like terms and synonyms to that original term"—does not plausibly support the existence of a <u>true</u> trade secret.[2]

While it is not necessary to disclose every detail of an alleged trade secret in a complaint, DRE could have explained that its "interpretation of data" or "process to assess the quality of evidence" relies on a specific, proprietary algorithm developed at a certain time and which no one else owns. Alternatively, DRE could

---

[2] And in any case, at no point does DRE address the value or secrecy of the ontology process.

13

have filed a description of the alleged trade secrets under seal.  While DRE "need not plead the trade secret with specificity in the complaint," Bancorp Servs., LLC v. Am. Gen. Life Ins. Co., No. 14-cv-9687, 2016 WL 4916969, at *11 (S.D.N.Y. Feb. 11, 2016) (citing R.F.M.A.S., Inc. v. Mimi So, 619 F. Supp. 2d 39, 86 (S.D.N.Y. 2009)), it must do more than simply list general categories of information.  If that were not the case, then any claimant could survive a motion to dismiss a trade secrets claim with conclusory statements that simply restate the elements of a trade secret.  Twombly and Iqbal require more.

Ultimately, DRE's pleading conflates the concept of a "trade secret" with "confidential information."  These are not one and the same—trade secrets are a subset of confidential information.  See IDX Sys. Corp., 285 F.3d at 583; Procaps S.A., 2015 WL 4430955, at *2.  As discussed earlier, alleging that a trade secret exists requires much more specificity as to the information owned by the claimant.  See Next Commc'ns, Inc., 2016 WL 1275659, at *3; Blue Ocean Laboratories, Inc., 2015 WL 9592523, at *6.  General allegations regarding "confidential information" and "processes" simply do not give rise to a plausible trade secrets claim.

But in addition, DRE's pleading all fails to include allegations supporting the various factors that define the "contours" of a trade secret: the information's value, the extent to which it is known by those within and outside the business, the amount of effort or money spent to develop the information, and the ease with which the information could be acquired or developed by outsiders.  The only factor under New York law that DRE does address is the third—the extent of measures

14

taken to safeguard the information. DRE points to the confidentiality agreement between the parties and alleges that it would not have disclosed information absent the contract. (See, e.g., Am. Counterclaims ¶ 17.) Neither party disputes that a confidentiality agreement was in place, but, again, confidential information is not the same as a trade secret. Taking steps to protect information through a confidentiality agreement does not, on its own, suggest the existence of a bona fide trade secrets.

As such, DRE's claims for trade secret misappropriation under New York and federal law are DISMISSED.

IV. CONCLUSION

For the foregoing reasons, DRE's second, third, and fourth counterclaims are DISMISSED. The Clerk of Court is ordered to close the open motion at ECF No. 28.

SO ORDERED.

Dated: New York, New York
January 23, 2018

_____
KATHERINE B. FORREST
United States District Judge